Jaymie Parkkinen (SBN 318394)
jparkkinen@taulersmith.com
Kiran Sekhon (SBN 360474)
ksekhon@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Brian Blaker*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN BLAKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PREMIER OFFICE CENTERS, LLC, a California limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **VIOLATION OF THE CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)**<br><br>2. **INTRUSION UPON SECLUSION**<br><br>3. **UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.***<br><br><u>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**</u><br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Brian Blaker ("Plaintiff"), individually and on behalf of all others similarly situated, alleges as follows based on personal knowledge as to his own conduct and on information and belief as to all other matters:

## INTRODUCTION

1. Defendant Premier Office Centers, LLC ("Defendant") operates a commercial website, www.premierworkspaces.com (the "Website"), that invites consumers to browse information about Defendant's commercial real estate services in California and throughout the United States. A typical visitor expects that the Website will respond to the visitor's requests by delivering content, but Defendant covertly configured the Website to do much more by embedding third-party tracking technology designed to identify visitors and convert their browsing activity into commercially useful intelligence.

2. Those third parties are data brokers NextRoll, Inc., X Corp., and LinkedIn, Corp. (collectively, the "Data Brokers"). A "data broker" is a business that profits by collecting and combining consumer personal data across contexts and using it for commercial or other purposes, often outside the consumer's awareness or control.

3. Defendant embedded each of the Data Brokers' anonymous visitor identification tracking software programs (the "Tracking Beacons") on the Website. The Data Brokers market this technology as a way for businesses to identify visitors who do not submit forms or otherwise reveal their identity during a visit—i.e., visitors who wish to remain anonymous through ordinary web browsing.

4. For example, as NextRoll describes it, the purpose of this tracking technology is to monitor visitors' interactions across websites and devices, build and maintain identity profiles, and link otherwise anonymous browsing activity to a persistent "unified identity." NextRoll explains that when a visitor loads a page containing its tracking software, the software executes code that records the visitor's interactions, creates a profile, and feeds that data back to NextRoll's platforms, where it is combined with cross-device data to recognize the same visitor over time. NextRoll

CLASS ACTION COMPLAINT

markets this technology as enabling businesses to identify who is visiting their websites, understand visitors' interests and behavior, prioritize outreach, and re-engage those visitors through targeted advertising and other follow-on campaigns across the web and across devices.

5. Defendant did not deploy this technology to provide content or maintain basic website functionality, but to identify visitors and extract commercial value from their browsing activity by transmitting identifying signals off-site for matching and downstream commercial exploitation.

6. Defendant used that technology here. When Plaintiff, a California consumer, visited Defendant's Website, the embedded Tracking Beacons caused his browser to capture and transmit identifying signaling information associated with his visit to the Website. That signaling information was then used to recognize Plaintiff, turning an otherwise anonymous visit into a linkable record used for targeting and monetization.

7. The California Invasion of Privacy Act ("CIPA") prohibits installing or using a "trap and trace device" without first obtaining consent or a court order. Cal. Penal Code § 638.51(a). A "trap and trace device" includes any "device or process" that captures the incoming impulses identifying the dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication. Cal. Penal Code § 638.50(c).

8. By deploying the Tracking Beacons, Defendant turned ordinary browsing on the Website into a data-extraction and visitor-identification operation. Plaintiff brings this action on behalf of a class of California residents to enforce CIPA's prohibition on the use of trap and trace devices without consent, to remedy Defendant's related unfair competition under California's Unfair Competition Law, and to redress the common law invasion of privacy caused by Defendant's covert capture and off-site transmission of visitors' identifying information. Plaintiff also seeks declaratory and injunctive relief directed at Defendant's uniform Tracking Beacon practices on behalf

CLASS ACTION COMPLAINT

of a class of Website visitors affected by that conduct.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because this is a proposed class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, there are 100 or more proposed class members, and minimal diversity exists.

10.     Jurisdiction over Defendant is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's access to and use of the Website from this District and Defendant's collection, use, and transmission of Plaintiff's data in connection with that activity. Venue is also proper under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant is subject to personal jurisdiction in this District and therefore resides here for venue purposes.

## PARTIES

12.     Plaintiff Brian Blaker is an individual, citizen, and resident of California.

13.     Defendant Premier Office Centers, LLC is a limited liability company formed under the laws of California and maintains its principal place of business at 2102 Business Center Drive, Irvine, California 92612.

14.     Plaintiff alleges the fictitiously named defendants captioned hereinabove as Does 1 through 25, inclusive, and each of them, were in some manner responsible or legally liable for the actions, damages, events, transactions, and circumstances alleged herein. The true names and capacities of such fictitiously named defendants, whether individual, corporate, associate, or otherwise are presently unknown to

Plaintiff, and Plaintiff will amend this Complaint to assert the true names and capacities of such fictitiously named defendants when they have been ascertained. For convenience, each reference herein to the named Defendant shall also refer to the Doe defendants.

## FACTUAL ALLEGATIONS

**A.  *The Tracking Beacons Extract and Transmit Visitor-Identifying Signals.***

15.    The Website's Tracking Beacons do not simply facilitate the delivery of webpages. They are engineered to extract and transmit a visitor's identifying dialing, routing, addressing, and signaling information for a separate purpose: to enable third-party identity matching and monetization.

16.    In ordinary browsing, certain technical exchanges occur so a browser can request and receive a page. But the identifying information at issue here is distinct. The Tracking Beacons deliberately capture and send ***additional*** visitor-identifying signals to third-party data brokers so the brokers can determine who the visitor is (or likely is) and link that visit to an identity profile. That extraction is not required to render the Website; it is implemented to create commercial value from Website visitors. The Tracking Beacons have no functional role in delivering website content; their sole purpose is to extract visitor-identifying signals for deanonymization and profiling.

17.    The additional visitor-identifying signals captured by the Tracking Beacons include, without limitation, the addressing and routing data embedded in a visitor's web requests and the Website's responses; data that functions as the communication's "to/from" and routing instructions that can be used to recognize and link a visitor's communications over time.

18.    In practical terms, the Tracking Beacons capture and transmit information such as: (i) the specific page and resource addresses the visitor requests from the Website (including paths and parameters identifying the content being requested); (ii) referrer and source fields showing how the visitor arrived at the Website and the prior page or channel that directed the request; (iii) browser- and device-signaling fields that

CLASS ACTION COMPLAINT

describe the visitor's client environment (e.g., browser family and version, operating system family and version, language/locale settings, time zone, screen and rendering characteristics, and related client "fingerprint-like" attributes); and (iv) unique request and session identifiers and timestamps generated during the visit that allow multiple page requests to be grouped and attributed to the same source.

19.    This information is distinct from the substance of the pages a visitor seeks to view. It is the identifying signaling and routing data that makes the visit linkable (i.e., data "reasonably likely to identify the source" of the visitor's electronic communications). Defendant captures and transmits this information through the Tracking Beacons not to display the Website, but to enable the Data Brokers to recognize the visitor and associate the visit with an identity profile for targeting and monetization.

20.    The Website is used not only for general marketing, but for consumer decision-making about Defendant's services, such as selecting office space and evaluating pricing, terms, and location options that can affect a visitor's business and financial decisions. A visitor's navigation of these pages can reveal private facts about the visitor's professional plans and operations, as well as sensitive financial details and other identifying information implicated by inquiries into rates, contracts, availability, and service configurations. When those visitor-level signals are linked to an identity profile, they become attributable to a specific individual rather than an anonymous browser session. Indeed, the Data Brokers market that the value of these signals is that they can be used to determine *who* is behind the visit.

**B.    *The Data Brokers Use Captured Signals To Identify Visitors.***

21.    The Data Brokers sell the Tracking Beacons, which comprise tracking technology designed to identify website visitors who do not submit forms, log in, or otherwise provide identifying information during a visit.

22.    The Tracking Beacons operate in three steps:

   a.    **Capture.** *First*, when a webpage loads, the Tracking Beacons

CLASS ACTION COMPLAINT

capture the incoming impulses and visitor-identifying headers and signals that reveal the source of the visitor's electronic communications with the Website, such as page/resource addresses requested, referrer/source fields, browser/device signaling fields, and session/request identifiers sufficient to distinguish the visitor and support identity matching.

b.  **Transmit.** *Second*, the Tracking Beacons send that visitor-identifying information to the Data Brokers during the Website visit. This process enables recognition of the same visitor across pages and repeat visits by using identifiers stored in the visitor's browser.

c.  **Match.** *Third*, the Data Brokers correlate the transmitted visit signals (such as referrer/source information and browser/device signals) with information in their own databases and other records to determine the likely identity of the visitor, and to associate the visit with an identity profile used for follow-on targeting.

23.  Through this process, the Website visit is converted into a linkable record associated with a consumer identity profile that can be leveraged for targeting, measurement, and monetization beyond the Website itself.

24.  During Plaintiff's visit to the Website on or around August 9, 2025, Defendant caused the Tracking Beacons to run on Plaintiff's device and to capture and transmit Plaintiff's visitor-identifying routing, addressing, and signaling information to the Data Brokers in real time. Defendant did not obtain informed, express consent for this practice and did not obtain a court order authorizing it.

**C.  *The Commercial Exploitation of Visitors' Profiles.***

25.  Once a visitor's signals are linked to their broker-created identity profile, the visit can be used to enrich that profile and to support targeting far beyond the context of the Website visit. In this ecosystem, the value of the Tracking Beacons is

CLASS ACTION COMPLAINT

their ability to identify the visitor and attach the visit to an identity record.

26.     Data brokers openly market the ability to convert ordinary web activity into intimate, individualized profiles. Indeed, the CEO of the world's largest data broker recently bragged about the staggering extent to which data brokers secretly track internet users:

> [W]e know who she is, what she watches, what she reads, and who she lives with . . . Through the power of connected identity, we also know who she follows on social media, what she buys online and offline, where she buys, when she buys, and more importantly, why she buys. . . . We know that [she] has two children and that her kids drink lots of premium fruit juice. We can see that the price of the SKU she buys has been steadily rising on her local retailer's shelf. We can also see that [her] income has not been keeping pace with inflation.[1]

27.     The Data Brokers used Plaintiff's visitor-identifying data to associate Plaintiff's Website visit with an identity profile and to enrich that profile with information about Plaintiff's interaction with the Website. Defendant obtains commercial value from this arrangement, including by enabling more precise audience building and targeted solicitation.

28.     The consequences extend beyond advertising. Once visitor-identifying signals are linked to a broker-maintained identity profile, the data becomes portable: it can be sold, licensed, queried, or otherwise disclosed to a wide range of third parties and repurposed outside the context in which it was collected.

29.     According to the Brennan Center for Justice:

> Among the main purveyors in this surveillance capitalism ecosystem are data brokers—companies that collect, assemble, and analyze personal information to create detailed profiles of individuals, which they then sell. . . . Myriad entities buy this information. For example, financial institutions and insurance firms use data for identity verification and risk assessments. Advertising companies use data to offer more relevant and targeted advertisements. More troublingly, data brokers have sold

---

[1] Lucas Ropek, *Data Broker Brags About Having Highly Detailed Personal Information on Nearly All Internet Users*, March 15, 2025 (gizmodo.com).

CLASS ACTION COMPLAINT

personal information to predatory loan companies, stalkers, and scammers, as well as to political consultants . . . that can use data to send voters disinformation and attempt to skew electoral outcomes. Data brokers also sell data to foreign actors whose uses of the information are not constrained by U.S. law. And . . . law enforcement and other government agencies (including state and local law enforcement, the FBI, the IRS, the Drug Enforcement Administration, the Department of Defense, and the Department of Homeland Security) have secretly been paying data brokers to access vast databases of personal information, including geolocation data, without any warrant, court order, or even subpoena.[2]

30.    The foreseeable risk created by Defendant's conduct is therefore not abstract: by converting Plaintiff's Website visit into a linkable identity profile and exporting it into the broker ecosystem without consent, Defendant created an enduring data linkage that can be exploited long after Plaintiff's Website visit ends and far beyond the purpose for which Plaintiff accessed the Website.

31.    Defendant's conduct has caused, and continues to cause, injury to Plaintiff, and other similarly situated visitors, in concrete ways; Plaintiff's communications with the Website were converted into a linkable identity profile without Plaintiff's consent; Plaintiff lost control over how the extracted visitor-identifying data is used and disseminated; and Plaintiff faces an ongoing risk that this unlawfully created identity profile will be repurposed, shared, or sold within the data broker ecosystem for uses far removed from Plaintiff's purpose in visiting the Website.

32.    Defendant's deployment of the Tracking Beacons intentionally interfered with Plaintiff's private affairs in a manner a reasonable person would find highly offensive. It took what should have been an ephemeral website visit and disclosed the visitor's identifying information to third-party data brokers for deanonymization and cross-context exploitation. The disclosure to the Data Brokers itself, made without consent and for identity matching and monetization, constitutes a concrete invasion of

---

[2] Emile Ayoub and Elizabeth Goitein, *Closing the Data Broker Loophole*, February 13, 2024 (brennancenter.org).

CLASS ACTION COMPLAINT

privacy because it attributes personal browsing activity to a visitor's identity profile and exports it outside the consumer-website relationship.

## CLASS ACTION ALLEGATIONS

33. **Class Relief Sought.** Defendant deployed the Tracking Beacons through a single, uniform Website configuration that operates automatically when visitors access the Website. Because the challenged practice is Website-wide and operates in the same manner for all visitors, Plaintiff seeks declaratory and injunctive relief directed at Defendant's uniform conduct, including orders requiring Defendant to cease the challenged capture and transmission and to delete and cease retaining information captured or received through the Tracking Beacons, and to take commercially reasonable steps to direct its service providers to do the same to the extent practicable. Plaintiff also seeks statutory damages and other monetary relief under California law for California visitors subjected to that same practice.

34. **Proposed Classes.** Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all others similarly situated as members of the following proposed classes:

a. **Damages Class (Rule 23(b)(3)).** All persons in California whose routing, addressing, or signaling information was captured and/or transmitted as a result of visiting the Website without first obtaining their affirmative, express consent during the applicable limitations period (the "Damages Class").

b. **Injunctive Class (Rule 23(b)(2)).** All persons in the United States whose routing, addressing, or signaling information was captured and/or transmitted as a result of visiting the Website without first obtaining their affirmative, express consent during the applicable limitations period (the "Injunctive Class").[3]

---

[3] Plaintiff refers to the Damages Class and the Injunctive Class collectively as the "Classes."

10                                          CLASS ACTION COMPLAINT

35.   Excluded from the Damages Class and the Injunctive Class are: (i) Defendant and its parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; (ii) Defendant's officers and directors; (iii) the Court, the Court's staff, and any judicial officer assigned to this case and members of their immediate families; and (iv) any person who timely and validly opts out of the Damages Class.

36.   Plaintiff reserves the right to amend the class definitions as discovery proceeds and the Court's rulings warrant.

37.   **Rule 23 Reference.** Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

38.   **Numerosity.** The Damages Class and Injunctive Class are so numerous that joinder is impracticable. The Website is publicly accessible and is used by consumers throughout the United States, including California. The Tracking Beacons operated automatically during Website visits and applied in the same manner to visitors. Members of the Damages Class and Injunctive Class are therefore readily in the thousands, if not more, and can be identified through objective criteria, including Website visit records and records reflecting the operation of the Tracking Beacons and resulting transmissions to the Data Brokers.

39.   **Commonality.** Common questions of law and fact exist, including:

   a.   Whether Defendant deployed the Tracking Beacons on its Website;

   b.   Whether the Tracking Beacons captured and transmitted visitors' routing, addressing, and signaling information as a result of visiting the Website;

   c.   Whether Defendant provided meaningful disclosure and obtained express, informed consent (and/or a court order where required) for the Tracking Beacons' capture and transmission of that information;

   d.   Whether Defendant installed or used a trap and trace device or

CLASS ACTION COMPLAINT

process within the meaning of Cal. Penal Code § 638.50(c) and violated Cal. Penal Code § 638.51;

e. Whether Defendant's covert deployment of the Tracking Beacons to identify visitors and transmit their visitor-identifying information to third-party data brokers constituted an intrusion upon seclusion under California law;

f. Whether Defendant's conduct constituted unlawful and/or unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and

g. The proper measure of statutory damages and the scope of declaratory and injunctive relief warranted by Defendant's uniform conduct.

40. **Predominance.** Common issues predominate. Defendant's deployment of the Tracking Beacons was uniform, and the key liability issues are capable of resolution using common proof, including Defendant's Website implementation, technical logs, and vendor documentation and records reflecting the operation of the Tracking Beacons and resulting transmissions to the Data Brokers. Individualized inquiries are not necessary because the challenged conduct arises from Defendant's standardized Website configuration and common methods of data capture, transmission, and exploitation during Website visits.

41. **Typicality.** Plaintiff's claims are typical because Plaintiff accessed the Website from California and, like other visitors subjected to Defendant's Tracking Beacon practices, experienced the same capture and transmission of his visitor-identifying routing, addressing, and signaling information to the Data Brokers.

42. **Superiority.** A class action is superior to other available methods for fairly and efficiently adjudicating the claims for monetary relief. The statutory damages and privacy harms at issue are not likely to support individual litigation, and resolving these claims in a single proceeding will conserve judicial resources, avoid

CLASS ACTION COMPLAINT

inconsistent outcomes, and provide an efficient mechanism for relief.

43.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests are aligned with those of other class members, and Plaintiff has retained counsel with experience litigating privacy and complex class actions. Plaintiff has no interests antagonistic to the Classes.

44.    **Injunctive Relief.** Defendant has acted on grounds generally applicable to the Injunctive Class by deploying the Tracking Beacons in a uniform manner on the Website. Plaintiff therefore seeks final injunctive and declaratory relief appropriate to that class as a whole, including orders requiring Defendant to cease the challenged capture and transmission practices, to delete and cease retaining information captured or received through the Tracking Beacons, and to take commercially reasonable steps to direct its service providers to do the same to the extent practicable.

45.    **Notice.** Plaintiff will propose and submit to the Court a plan for providing the best notice practicable under the circumstances to the class certified under Rule 23(b)(3), including individual notice to the extent class members can be identified through reasonable effort, consistent with Rule 23(c)(2)(B) and due process. Any notice as to injunctive or declaratory relief may be provided as the Court orders pursuant to Rule 23(c)(2)(A).

### COUNT I: VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW, CAL. PENAL CODE § 638.51

***(On Behalf of Plaintiff and the Damages Class)***

46.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

47.    CIPA defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

48. CIPA prohibits any person from installing or using a trap and trace device without first obtaining consent or a court order. Cal. Penal Code § 638.51(a).

49. Defendant installed and used the Tracking Beacons on the Website. The Tracking Beacons are "device[s] or process[es]" within the meaning of § 638.50(c) because they operate during Website visits to capture incoming electronic impulses and extract visitor-identifying routing, addressing, and signaling information.

50. As alleged herein, the Tracking Beacons capture and transmit, among other things, addressing and routing information, referrer and source fields, browser- and device-signaling fields, and unique request and session identifiers and timestamps—information reasonably likely to identify the source of a visitor's electronic communications.

51. The Tracking Beacons are deployed for the purpose of enabling the Data Brokers to recognize the same visitor across multiple communications and to associate the visitor's Website activity with an identity profile used for targeting and monetization.

52. Defendant installed and used the Tracking Beacons without first obtaining a court order authorizing the installation or use of a trap and trace device or process.

53. On or around August 9, 2025, Plaintiff visited the Website from California. During Plaintiff's visit, Defendant caused the Tracking Beacons to run on Plaintiff's device and to capture and transmit Plaintiff's visitor-identifying routing, addressing, and signaling information to the Data Brokers.

54. Defendant deployed the Tracking Beacons in the same manner for other California visitors to the Website during the class period, causing the same capture and transmission of visitor-identifying routing, addressing, and signaling information.

55. Plaintiff did not provide express, informed consent to Defendant's installation or use of the Tracking Beacons, including Defendant's capture and transmission of Plaintiff's visitor-identifying routing, addressing, and signaling information to the Data Brokers for identity matching and monetization. Defendant

14                                    CLASS ACTION COMPLAINT

likewise did not obtain express, informed consent from other Damages Class members.

56. By installing and using the Tracking Beacons without the consent and/or court order required by CIPA, Defendant violated Cal. Penal Code § 638.51.

57. Plaintiff and members of the Damages Class suffered injury because Defendant captured and transmitted their visitor-identifying routing, addressing, and signaling information without consent. That capture and third-party disclosure for identity matching is a concrete invasion of privacy because it interferes with visitors' private affairs and discloses their visitor-identifying information to data brokers for deanonymization and cross-site profiling—conduct a reasonable person would find highly offensive when imposed without consent.

58. Pursuant to Cal. Penal Code § 637.2, Plaintiff and the Damages Class seek statutory damages and such other relief as the Court deems proper for Defendant's installation and use of a trap and trace device or process without the consent and/or court order required by law. Plaintiff also seeks declaratory and injunctive relief appropriate on a classwide basis under Rule 23(b)(2) to prohibit Defendant's continued deployment and use of the Tracking Beacons as alleged herein and to require appropriate remedial measures, including deletion and cessation of retention of information captured or received through the Tracking Beacons and commercially reasonable steps to direct Defendant's service providers to do the same to the extent practicable.

## **COUNT II: INTRUSION UPON SECLUSION**
### (*On Behalf of Plaintiff and the Damages Class*)

59. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

60. Under California law, a defendant is liable for intrusion upon seclusion when it intentionally intrudes into a private place, conversation, or matter in a manner that would be highly offensive to a reasonable person.

61. Defendant intentionally implemented and deployed the Tracking Beacons

CLASS ACTION COMPLAINT

on the Website. The Tracking Beacons were not incidental or inadvertent; they were purposefully embedded and configured to run when visitors accessed the Website.

62. By means of the Tracking Beacons, Defendant intruded into Plaintiff's and Damages Class members' private affairs by capturing and transmitting information associated with their Website visits, including visitor-identifying routing, addressing, and signaling information and visit-level interaction data, and sending that information to third-party data brokers for visitor recognition, matching, and downstream commercial exploitation.

63. Plaintiff and Damages Class members had a reasonable expectation of privacy in the fact and manner of their browsing activity on the Website and in not having an otherwise anonymous visit converted into a linkable identity profile and conveyed off-site to third parties for identification, targeting, and exploitation.

64. Defendant's intrusion would be highly offensive to a reasonable person. Defendant used a consumer-facing Website as the intake point for a visitor-identification process that operates in the background, without meaningful disclosure and without informed, express consent, to deanonymize visitors and export their identifying information to data brokers for commercial purposes. This practice is not necessary to deliver the webpages a consumer requests and instead serves to convert a visitor's activity into a commercially exploitable identity profile.

65. Plaintiff did not authorize Defendant to deploy third-party visitor-identification mechanisms on his device or to transmit his visitor-identifying information and visit data to data brokers for recognition, matching, targeting, or monetization. Damages Class members likewise did not authorize such conduct.

66. Defendant's conduct was willful, intentional, and carried out with conscious disregard for the privacy rights of Website visitors. Defendant knowingly embedded and maintained third-party visitor-identification technology designed to deanonymize visitors and transmit their identifying information off-site for commercial use, while failing to provide meaningful disclosure or obtain informed, express

CLASS ACTION COMPLAINT

consent. Defendant's conduct therefore constituted malice, oppression, and/or fraud within the meaning of Cal. Civ. Code § 3294, warranting an award of punitive damages.

67. As a direct and proximate result of Defendant's intrusion, Plaintiff and Damages Class members suffered harm, including invasion of privacy, loss of control over their personal information, and the creation and dissemination of a linkable identity profile of their browsing activity outside the consumer-website relationship.

68. Plaintiff seeks all available relief, including damages on behalf of the Damages Class, as well as injunctive and declaratory relief appropriate on a classwide basis under Rule 23(b)(2) to enjoin Defendant's uniform Tracking Beacon practices alleged herein and to require appropriate remediation, including deletion and cessation of retention of information collected or received as a result of those practices and commercially reasonable steps to direct Defendant's service providers to do the same to the extent practicable.

## COUNT III: UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE §§ 17200 *et seq.*

### (*On Behalf of Plaintiff and the Damages Class*)

69. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

70. Defendant's conduct—embedding and using the Tracking Beacons on the Website to capture and transmit visitors' identifying information and thereby convert ordinary browsing into linkable identity profiles—constitutes unfair competition.

71. Defendant's conduct is unlawful because it violates, and is independently actionable under, California's privacy laws, including without limitation CIPA's prohibition on installing or using a trap and trace device or process without the required consent or court order. Cal. Penal Code §§ 638.50-638.51.

72. Defendant's deployment of the Tracking Beacons, and the resulting capture and transmission of identifying information associated with Website visits, is

precisely the type of covert identification mechanism CIPA's trap and trace provision was enacted to prevent. Defendant did not obtain the consent or court authorization the statute requires.

73. By engaging in this unlawful conduct in the course of operating a commercial website aimed at California consumers, Defendant committed business acts and practices that are unlawful within the meaning of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

74. Defendant's conduct is also unfair. A reasonable consumer visiting the Website expects that a browser will request and receive content. A reasonable consumer does not expect that the visit will be covertly used to identify the visitor, associate the visit with an identity profile, and transmit visitor-identifying information to third-party data brokers for downstream targeting and monetization.

75. The injury to consumers is substantial. Defendant's configuration of the Website caused visitors to lose the practical anonymity that ordinary web browsing provides and to have their visits converted into trackable records associated with identifying information without consent.

76. Those harms are not outweighed by countervailing benefits to consumers or competition. Any operational analytics or website functionality can be accomplished without covert third-party identification and deanonymization and without transmitting visitors' identifying information to data brokers.

77. The injury was not reasonably avoidable because the relevant tracking and identification occurred automatically in the background during the visit, without disclosure sufficient to permit informed choice.

78. Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's unfair competition. Browsing and visit-level data has economic value, and there is an established market for such data; Defendant's covert collection and transfer of visitors' data impaired consumers' ability to control, withhold, or monetize that value. Defendant's surreptitious collection and transfer of that data inhibited

18                                    CLASS ACTION COMPLAINT

Plaintiff's and Damages Class members' ability to participate in that market on informed terms, including by deciding whether to withhold, limit, or exchange that data for value.

79. In addition, Plaintiff and Damages Class members possess protectable interests in their personal information, including legally recognized rights to exclude or limit sale and downstream use of that data; Defendant's undisclosed transfer of data to data brokers diminished those interests and interfered with consumers' ability to exercise those rights.

80. Defendant obtained money or property from Plaintiff and Damages Class members by acquiring, using, and exploiting the value of their visit data and identifying information without permission, and by obtaining the benefit of enhanced visitor identification and targeting capabilities without paying for that value.

81. All such conduct is unethical, immoral, substantially injurious to consumers, and/or violates public policy.

82. As a direct and proximate result of Defendant's conduct, acts, and omissions, Plaintiff and Damages Class members have suffered injuries in fact and lost money or property, including by being deprived of the ability to control, withhold, or otherwise realize the economic value of their visit data and identifying information that Defendant caused to be transmitted to data brokers for commercial use. Plaintiff seeks restitution and other equitable relief available under Cal. Bus. & Prof. Code § 17203 on behalf of Plaintiff and the Damages Class, and further seeks injunctive and declaratory relief under § 17203 directed at Defendant's uniform Tracking Beacon practices, appropriate on a classwide basis under Rule 23(b)(2), including orders prohibiting the challenged practices and requiring appropriate remedial measures, along with prejudgment interest and attorneys' fees and costs as provided in Cal. Code Civ. Proc. § 1021.5.

CLASS ACTION COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in his favor and against Defendant, and award the following relief:

1.      Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel;

2.      Declare that Defendant's conduct as alleged herein violates California Penal Code §§ 638.50(c) and 638.51;

3.      Declare that Defendant's conduct as alleged herein constitutes intrusion upon seclusion under California common law;

4.      Declare that Defendant's conduct as alleged herein constitutes unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*.;

5.      Issue appropriate declaratory and injunctive relief directed at Defendant's uniform Tracking Beacon practices, including orders requiring Defendant to delete and cease retaining visitor-identifying routing, addressing, and signaling information captured or received through the Tracking Beacons, and to take commercially reasonable steps to direct its service providers, including the Data Brokers, to do the same to the extent Defendant has the right or ability to do so;

6.      Award statutory damages to Plaintiff and the Damages Class pursuant to Cal. Penal Code § 637.2;

7.      Award Plaintiff and the Damages Class general and special damages in an amount to be proven at trial for Defendant's intrusion upon seclusion;

8.      Award injunctive relief requiring Defendant to cease installing and/or using the Tracking Beacons or any trap and trace device or process on the Website without lawful consent and/or the court order required by Cal. Penal Code § 638.51, and requiring such further injunctive relief as the Court deems just and proper;

9.      Award punitive and exemplary damages to the extent permitted by law;

20                                          CLASS ACTION COMPLAINT

10.   Award restitution and such other equitable relief as the Court deems proper under Cal. Bus. & Prof. Code § 17203, including disgorgement of ill-gotten gains to the extent permitted;

11.   Award Plaintiff and the Damages Class their reasonable attorneys' fees and costs to the extent permitted by law;

12.   Award pre-judgment and post-judgment interest as permitted by law; and

13.   Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues triable to a jury.

DATED: January 30, 2026                 TAULER SMITH LLP

                                         */s/ Jaymie Parkkinen*
                                         Jaymie Parkkinen

                                         *Attorneys for Plaintiff*
                                         *Brian Blaker*